IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  ZOSTAVAX (ZOSTER VACCINE | : | MDL NO. 2848 |
| LIVE) PRODUCTS LIABILITY | : | |
| LITIGATION | : | |
| _____ | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| EMILY SANSONE | : | |
| | : | CIVIL ACTION NO. 18-20114 |
| v. | : | |
| | : | |
| MERCK & CO., INC., et al. | : | _____ |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 367

Bartle, J.                                            July 27, 2021

          Plaintiff Emily Sansone, a Florida citizen, brings
this action against defendants Merck & Co., Inc. and Merck Sharp
& Dohme Corp. (together, "Merck").  She alleges that Zostavax,
Merck's vaccine intended to reduce the risk of shingles, caused
her to develop shingles in her eye.  Plaintiff asserts product
liability claims for defective design and failure to warn as
well as claims for negligence and negligent misrepresentation.
In addition, the complaint alleges claims for breach of the
implied warranty and breach of the express warranty.[1]

_____

1.   The parties dismissed by stipulation plaintiff's claims for
product liability defective manufacturing, negligent
manufacturing, and unjust enrichment as well as a claim for loss
of consortium asserted by plaintiff's husband.

This is one of over 1,950 actions coordinated or consolidated for pretrial proceedings before the undersigned as a part of Multidistrict Litigation ("MDL") No. 2848.  It is one of six Group A Bellwether Trial Pool Cases selected by the parties to proceed through case specific discovery and dispositive motion practice in accordance with the procedure and schedule set forth in Pretrial Order ("PTO") No. 82, as amended by PTO Nos. 313, 346, 354, and 361.

Before the court is the motion of Merck for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that Florida's four-year statute of limitations period for plaintiff's product liability and negligence claims expired before she commenced this action on September 20, 2018.  Merck argues the claims accrued in either late September or early October 2007, when plaintiff sought treatment from her ophthalmologist for a rash around her eye shortly after receiving Zostavax, or in mid-October 2007 or May 2008, when plaintiff told her gastroenterologist and gynecologist that she developed shingles after she received the vaccine for shingles.

Merck separately moves for summary judgment on plaintiff's breach of implied warranty and breach of express warranty claims.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A factual dispute is material if it might affect the outcome of the suit under governing law. Id. at 248.

We view the facts and draw all inferences in favor of the non-moving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party]." See Anderson, 477 U.S. at 252. "The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e).

II

The following facts are undisputed or viewed in the
light most favorable to the plaintiff, the non-moving party.
All the relevant events took place in Florida.

On September 17, 2007, Dr. Jeffrey Hunter administered
the Zostavax vaccine to plaintiff.  Dr. Hunter understood when he
recommended Zostavax to plaintiff that it reduced the risk of
shingles by about 50 percent for patients, such as plaintiff, who
were over 60 years old.

During the several days that followed plaintiff's
inoculation, she developed a rash and bumps around her right eye.
On September 28, 2007, she sought treatment for her eye from
ophthalmologist Dr. Jonathan Silbiger.  Plaintiff complained of
pain in the right eye and red raised bumps on the right side of her
face surrounding the eye.  She also complained of sharp pain of the
left eye which she had felt intermittently for about a day.

The medical technologist in Dr. Silbiger's office who
initially spoke to plaintiff wrote in plaintiff's medical chart
that plaintiff might have shingles.  Plaintiff told Dr. Silbiger
that she received the shingles vaccine two days earlier.  Dr.
Silbiger determined, after examining plaintiff, that her eye
symptoms could be due to the shingles virus.  He was also concerned
about a possible bacteria corneal ulcer.  He treated plaintiff for
both ailments.  On October 1, 2007, plaintiff visited Dr. Silbiger

-4-

again.  The pain in her right eye was worse, and the eye was now
sensitive to light.  Dr. Silbiger confirmed his initial shingles
diagnosis.

According to plaintiff, Dr. Silbiger told her during
these visits that it was a "good thing" she received the shingles
vaccine because she could have some immunity as a result.  Dr.
Silbiger agreed at his deposition that this is something he may
have told plaintiff.  Plaintiff stated she understood he was
implying that the vaccine may help the healing process, rather than
have caused shingles to develop.  Dr. Silbiger also testified that
during plaintiff's visits to his office in 2007, there was no
conversation about whether her shingles rash was caused by the
shingles vaccine.  He understood Zostavax only reduced the risk of
contracting shingles by about 50 percent.

Plaintiff's medical records reflect that she told her
gastroenterologist on October 15, 2007 that after receiving an
immunization she developed shingles in her right eye which resolved
with treatment.  Her medical records also show that she told her
gynecologist on May 6, 2008 that she developed shingles in her eye
after receiving the shingles vaccine and was still being treated
for inflammation of the eye.

Plaintiff testified that she did not realize Zostavax
could have caused her eye symptoms until 2018 when she saw a
television advertisement by her counsel that reported Zostavax had

been linked to cases of the shingles.  Dr. Silbiger confirmed with her that the vaccine with which she was inoculated was Zostavax. Plaintiff commenced this action shortly thereafter on September 20, 2018.

III

Product liability and negligence claims have a four-year statute of limitations under Florida law.  Fla. Stat. § 95.11(3)(a) and (e).  Generally, "[a] cause of action accrues when the last element constituting the cause of action occurs."  Fla. Stat. § 95.031(1).  An action for products liability accrues "the date that the facts giving rise to the cause of action were discovered." Fla. Stat. § 95.031(2)(b).  The discovery of facts which give rise to a cause of action need not amount to a "legal certainty" that a claim exists for the limitations period to begin to run.  Univ. of Miami v. Bogorff, 583 So.2d 1000, 1004 (Fla. 1991).  Plaintiffs need only have notice "of the possible invasion of their legal rights."  Id.

Further, it is not necessary that a plaintiff actually discover the facts giving rise to a cause of action for the action to accrue.  A cause of action accrues where a plaintiff, with the exercise of due diligence, should have discovered the facts which give rise to it.  Fla. Stat. § 95.031(2)(b); see also Bogorff, 583 So.2d at 1004.  When determining whether a product liability claim has accrued absent actual discovery, Florida courts consider

-6-

whether the plaintiff's alleged injury is distinct in some way from a naturally expected condition.  <u>Eghnayem v. Bos. Sci. Corp.</u>, 873 F.3d 1304, 1323 (11th Cir. 2017).  More specifically, Florida law looks to:

> whether the injury was the type of injury that a patient might expect to occur to a person in her condition even when there had been no negligence on the part of the putative defendant.  When there is nothing about an injury that would communicate to a reasonable lay person that the injury is more likely a result of some failure of medical care than a natural occurrence that can arise in the absence of medical negligence, the knowledge of the injury itself does not necessarily trigger the running of the statute of limitations.  The key is whether the injuries suffered after contact with a product were sufficiently dramatic to provide notice that something might be wrong with the product; that is, was there a dramatic change in the patient's condition suggesting a product defect?

<u>In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.</u>, 748 F. App'x 212, 216 (11th Cir. 2018).

IV

Merck first argues that the notes of plaintiff's doctors in 2007 and 2008, which indicate she told them she developed the shingles after receiving Zostavax, demonstrate without dispute that she suspected Zostavax caused her injuries.  Accordingly, Merck asserts the statute of limitations began to run no later than 2008, more than four years before she filed suit in 2018.

-7-

This court previously reasoned that there is no rational explanation when a person states in the same breath "I had a shingles vaccine" and "I was sick" other than to communicate an understanding of a causal relationship between the two events. Juday v. Merck & Co., Inc., Civil Action No. 16-1547, 2017 WL 1374527, at *5 (E.D. Pa. Apr. 17, 2017).  In Juday, this court held, applying Pennsylvania law, that the plaintiff "not only had an unrebutted suspicion but also had information there was a reasonable possibility that the vaccine was the source of his symptoms."  Id. at 7.

The facts here stand in stark contrast to Juday. Critical to this court's holding in Juday was a statement by the plaintiff to his employer in a disability report that he had a severe allergic reaction to the shingles vaccine.  As our Court of Appeals reiterated in affirming this court's decision in Juday, under these circumstances there is no "rational explanation [other than to communicate a causal connection] for saying not only that he was sick but also in the same breath that he had received the shingles vaccination."  Juday v. Merck & Co., Inc., 730 F. App'x 107 (3d Cir. 2018).

In this case, the record taken as a whole contains genuine disputes of material fact as to whether plaintiff believed or had reason to believe as early as 2007 and 2008 that her eye symptoms may have been a reaction to Zostavax.  Dr. Silbiger did

-8-

not discuss with plaintiff whether Zostavax caused her eye symptoms during her visits in 2007.  Rather, he agreed he may have explained to her that receiving Zostavax was a "good thing" because it might have created some immunity to the shingles virus.

Likewise, plaintiff's subsequent statements to her gynecologist and gastroenterologist that she was diagnosed with shingles after receiving the shingles vaccine do not alone demonstrate indisputably she believed in 2007 or 2008 that Zostavax possibly caused her shingles.  A reasonable juror could determine that she communicated this information to advise that although she had had the shingles, the vaccine aided her recovery.

Drawing all inferences in favor of plaintiff, it is a question for the jury whether her statements to her doctors in 2007 and 2008 demonstrate that she believed or had reason to believe that Zostavax may have caused her symptoms.  See In re Mentor Corp., 748 F. App'x at 217.

V

Merck also argues that even if plaintiff did not suspect Zostavax was the cause of her eye symptoms, the statute of limitations on her claims accrued in 2007 because she knew she was vaccinated and was diagnosed with shingles shortly thereafter.

Accrual of the statute of limitations for plaintiff's claims is not triggered merely because she knew of the injury which later formed the basis of her claims.  See Eghnayem, 873 F.3d at

-9-

1323-24.  For the statute of limitations to begin to run, her injury must have been distinct in some way to suggest that it was not the result of some naturally occurring condition but rather of a defect in the Zostavax vaccine.  See id.  There is no dispute that Dr. Hunter recommended Zostavax to plaintiff because — as a consequence of her age — she had an increased risk of shingles. There is also no dispute that Zostavax does not completely eliminate the risk of shingles.  Dr. Hunter believed the vaccine only reduced the risk of shingles by about 50 percent when he recommended it to plaintiff.  Dr. Silbiger understood the same when he treated plaintiff for the shingles after she told him she had received the shingles vaccine.

The court cannot state as a matter of law that there was anything about plaintiff's injury that would communicate to a reasonable lay person that the injury is more likely the result of the Zostavax vaccine than a natural occurrence that can arise in the absence of Zostavax.  See In re Mentor Corp., 748 F. App'x at 216.  Again, it is a matter for the jury.

VI

Merck also moves for summary judgment on plaintiff's claims for breach of implied warranty and for breach of express warranty.  That motion will be granted as plaintiff does not oppose the motion and there are no facts in the record to support these two claims.

-10-