IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ZOSTAVAX (ZOSTER VACCINE LIVE) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 2848 |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : : | CIVIL ACTION NO. 18-md-2848 |

MEMORANDUM IN SUPPORT OF PRETRIAL ORDER NO. 371

Bartle, J.                                                      August 3, 2021

      Before the court is the motion of Chris and Pat Juday, husband and wife, to intervene under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure in this multidistrict litigation involving Zostavax, the vaccine of Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively, "Merck") to prevent shingles. The Judays seek to modify any confidentiality or other orders which impede their access "to full and complete discovery regarding Zostavax." Merck and non-parties Mark T. Sadaka, Esquire and Sadaka Associates LLC oppose the motion.

      The court entered a stipulated Protective Order as Pretrial Order No. 19 (Doc. # 44) on October 24, 2018. It governs "confidential, propriety or private information for which special protection from public disclosure and from use for any purpose other than prosecuting and defending the action may be warranted." The order contains detailed procedures for the designation of protected information.

The Judays are no strangers to this court.  On April 5, 2016, they filed an action in this court against Merck in which they alleged damages resulting from injuries Chris Juday suffered because of the Zostavax vaccine.  Specifically, they asserted the vaccine caused him a severe case of chicken pox and resulting pneumonia, bronchitis obliterans in his lungs, asthma and reactive airway disease.[1]  After limited discovery, the court granted Merck's motion for summary judgment on the ground that the statute of limitations barred the action.  Juday v. Merck & Co., Inc., Civil Action No. 16-1547, 2017 WL 1374527 (E.D. Pa. Apr. 17, 2017).  The Court of Appeals affirmed on April 4, 2018.  See Juday v. Merck & Co., Inc., 730 Fed. App'x 107 (3d. Cir. 2018).

On April 16, 2019, the Judays filed a legal malpractice action against Mark T. Sadaka, Esquire and Sadaka Associates LLC, their attorneys who had represented them in the underlying personal injury lawsuit.  Juday, et al. v. Sadaka, et al., No. 19-1643 (E.D. Pa.).  Under Pennsylvania law, plaintiffs must prove a case within a case.  They must establish that they would have been successful in the underlying action and that the negligence or breach of duty of care on the part of

---

1. Their complaint contained counts for negligence, design defect, failure to warn, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and loss of consortium.

their former attorneys was the proximate cause of plaintiffs' loss. Kituskie v. Corbman, 714 A.2d 1027, 1029-30 (Pa. 1988).

The Judays seek to intervene in this multidistrict litigation to obtain discovery to aid them in meeting their burden in the malpractice action. Rule 24(b)(1)(B) provides in relevant part:

> (b) Permissive Intervention.
>
> (1) In General. On timely motion, the court may permit anyone to intervene who:
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

(emphasis original). Our Court of Appeals has held that a non-party may use this rule to seek the modification of a protective order. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994).

At the outset, it is clear that the Judays' malpractice action involves common questions of law and fact with this multidistrict litigation. Both deal with issues related to the design and effect of Zostavax, the warnings provided, and whether there is a causal connection between Zostavax and various illnesses allegedly sustained by the vaccine recipients. Had the Judays' underlying personal injury action survived until the commencement of this multidistrict

litigation in 2018, the action surely would have been part of it.

The court further finds that the motion to intervene is timely. While it comes over two years after the malpractice action was filed, it does not constitute unfairness or prejudice to any party in the multidistrict litigation. A motion to intervene may be granted even after a lawsuit has been settled. See Pansy, 23 F.3d at 780; United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990); Arnold v. Pa. Dep't. of Transp., 477 F.3d 105, 108 (3d Cir. 2007).

The court must next balance the various factors enumerated in Pansy to determine whether and if so under what conditions the court will modify the protective order which presently excludes the Judays and their counsel. The Pansy factors include:

> (1) the interest in privacy of the party seeking protection;
>
> (2) whether the information is being sought for a legitimate purpose or an improper purpose;
>
> (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious;
>
> (4) whether the information sought is important to public health and safety;
>
> (5) whether sharing the information among litigants would promote fairness and efficiency;

>    (6) whether the party benefitting from the order of confidentiality is a public entity or official; and,
>
>    (7) whether the case involves issues important to the public.

Arnold, 477 F.3d at 108. The Pansy Court explained that these factors are not exhaustive, are unavoidably vague and are "meant to provide district courts with flexibility in how to consider the relevant facts in each case." 23 F.3d at 789; see also Arnold, 477 F.3d at 108.

The court finds that the relevant Pansy factors all point to allowing the Judays to intervene. The information they seek is being sought for a legitimate purpose, that is to obtain essential discovery in their pending lawsuit. Allowing them to intervene will certainly promote fairness and efficiency and not undermine any privacy interest. It makes no sense to require the Judays to undertake expensive and duplicative discovery in this complex matter. It is certainly in the public interest, including judicial economy, to permit the Judays to benefit from that discovery. As to other Pansy factors, the pending motion to intervene and the Protective Order do not appear to concern any issues of embarrassment or any benefit to a public entity or official.

The Judays do not seek to have the Protective Order vacated. They recognize as does the court the legitimate

privacy interests at this point in maintaining the order.  The Judays simply seek to modify the order so as to obtain the benefit of the discovery subject to its umbrella while otherwise being subject to its restrictions.

Finally, it should be noted that the Protective Order entered by the court contains the following provision: "13.1 . . .  The Court retains the right to allow disclosure of any subject covered by this stipulation or to modify this stipulation at any time in the interest of justice."  The court finds that it is in the interest of justice to modify the Protective Order as set forth below.

Accordingly, the court will grant the motion of the Judays to intervene in this multidistrict litigation.  The court will permit them to obtain at their own expense the fact discovery taken or produced that is subject to the protective order and that relates to their claims in the malpractice action.  Before any fact discovery is made available, however, the Judays' counsel must file a declaration with the court that they and the Judays agree to and are bound by all the terms and conditions of the Protective Order entered by this court on October 24, 2018 (Doc. # 44).  The Judays shall not be permitted otherwise to participate in this multidistrict litigation, and the litigants shall not be required to serve on the Judays any filings or notices unrelated to them.